UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LAMBETH HOUSE, INC. | CIVIL ACTION |
| VERSUS | NO. 07-608<br>c/w 08-4967 |
| LIBERTY RESTORATION GROUP, LLC, ET AL. | SECTION "N" (4) |

**ORDER AND REASONS**

Presently before the Court in Civil Action No. 07-608 is a Motion for Summary Judgment filed by Defendant Southern American Insurance Company ("Defendant") (Rec. Doc. No. 88). With its motion, Defendant seeks dismissal of Plaintiff's claims asserted under the Texas Deceptive Trade Practices Act and the Texas Insurance Code. As stated herein, **IT IS ORDERED** that the motion is **GRANTED IN PART** and **DENIED IN PART**.

**I.  Background**

In April 2004, Plaintiff, Lambeth House, Inc., entered into a construction contract with Defendant Liberty Restoration Group ("Liberty"). Pursuant to the contract, Liberty was to renovate the exterior cladding of Lambeth House's continuing care retirement facility in New Orleans, Louisiana. The construction contract between Plaintiff and Liberty additionally obligated Liberty to furnish payment and performance bonds from a solvent, legal surety in accordance with the Louisiana Private Works Act, La. R.S. 9:4801 *et seq*. Liberty purported to satisfy this obligation

1

by obtaining payment and performance bonds from Defendant International Fidelity & Surety, Ltd. ("IFS"), through Defendant. *See* Exhibit 10 to Defendant's Motion for Summary Judgment (Rec. Doc. No. 88-16).

Plaintiff eventually demanded that IFS satisfy its obligations relative to the performance and payment bonds that it had issued. Ultimately, however, it became evident that IFS was not financially capable of doing so, and was not authorized to act as a commercial surety in either Louisiana and Texas. Further, according to Plaintiff, it discovered that IFS actually was a "sham" company. Seeking some relief from the failed transaction, Plaintiff filed suit in this Court on February 2007. In that action, Plaintiff seeks to recover, *inter alia*, the amount of its claim against IFS, and attorney's fees, from Defendant based on its role in procuring "worthless" surety bonds for Plaintiff's construction project.

## II.     Summary Judgment Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed.2d 202 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides*

*Healthcare System, L.L.C.*, 277 F.3d 757, 764 (2001).

## II. Analysis

### A. Deceptive Trade Practices Act Claim

Count V of Plaintiff's complaint in Civil Action No. 07-608 asserts a claim against Defendant under the Texas Deceptive Trade Practices Act ("DTPA"), V.T.C.A., Bus. & C. §17.41, *et seq.* In requesting dismissal of the claim, Defendant contends that, because Plaintiff's assets are not less than $25,000,000, it has no standing under the DTPA as a "business consumer." *See* V.T.C.A., Bus. & C. §17.45(4). Defendant additionally maintains that the transactions in question are exempt from the statute's coverage. *Id.* at §17.49(f).

Plaintiff's briefs contain no response to Defendant's assertions relative to the viability of its claim under the DTPA. Given Plaintiff's lack of formal opposition, and that Defendant's arguments appear to have merit, **IT IS ORDERED** that this aspect of Defendant's motion is **GRANTED**. Accordingly, Plaintiff's claim under the DTPA is **DISMISSED WITH PREJUDICE**.

### B. Texas Insurance Code Claims

Count VI of Plaintiff's complaint alleges claims against Defendant under §101.201(a) and §101.202 of the Texas Insurance Code. These sections of the Insurance Code provide, in pertinent part:

> **§101.201  Validity of Insurance Contracts**
>
> An insurance contract effective in this state and entered into by an unauthorized insurer is unenforceable by the insurer. A person who in any manner assisted directly or indirectly in the procurement of the contract is liable to the insured for the full amount of a claim or loss under the terms of the contract if the unauthorized insurer fails to pay the claim or loss.

3

**§101.202 Attorney's Fees**

(a) In an action against an unauthorized insurer or unauthorized person on a contract of insurance issued or delivered in this state to a resident of this state or to a corporation authorized to do business in this state, the court may award to the plaintiff a reasonable attorney's fee if:

   (1) the insurer or person failed, for at least 30 days after a demand made before the commencement of the action, to make payment under the contract's terms; and

   (2) the failure to make the payment was vexatious and without reasonable cause.

See V.T.C.A., Ins. §§101.201 and 101.202.

Defendant maintains that these claims are rendered untimely by La. R.S. 9:5606 (which establishes one-year and three-year peremptive periods for suits against insurance agents and various other insurance personnel), as well as by the general one-year prescriptive period set forth in Louisiana Civil Code article 3492. *See* La. R.S. 5606; La. Civ. Code art. 3492.[1] Assuming that

---

[1] These statutory provisions provide:

**§ 5606. Actions for professional insurance agent liability**

A. No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

B. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and

4

the claims are timely, Defendant additionally contends that §101.201 offers no remedy to Plaintiff because the IFS suretyship contracts are not "insurance contracts" and, given that Plaintiff's construction project was located in New Orleans, are not "effective in Texas." Having reviewed the parties' submissions, the Court finds that, on the showing made, Defendant is not entitled to judgment as a matter of law on these claims. Accordingly, **IT IS ORDERED** that this aspect of Defendant's motion is **DENIED**.

With respect to Defendant's timeliness arguments, the Court is not entirely persuaded that the peremption periods established by La. R.S. 9:5606 apply to claims asserted against persons who have <u>not</u> complied with applicable Louisiana licensing requirements. To the extent that legislative history or jurisdictional treatment supports the application of the statute beyond Louisiana

---

> interdicts.
>
> C. The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953.
>
> D. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.
>
> **Art. 3492. Delictual actions**
>
> Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained. It does not run against minors or interdicts in actions involving permanent disability and brought pursuant to the Louisiana Products Liability Act or state law governing product liability actions in effect at the time of the injury or damage.

licensees (or admittees), neither has been cited to the Court. In any event, assuming that Defendant is correct regarding the scope of La. R.S. 9:5606, the Court finds that a genuine issue of material fact nevertheless exists with respect to the timeliness of Plaintiff's claims under the Texas Insurance Code. This is true whether La. R.S. 9:5606, or Louisiana Civil Code article 3492, provides the applicable time limitations.

Specifically, the Court disagrees that the Plaintiff's October 2005 discovery of IFS's unauthorized status in Louisiana and Texas started the applicable one-year limitations period. Rather, the conduct addressed by §101.201 of the Texas Insurance Code is legally actionable only when an "unauthorized insurer" has entered into an "insurance contract" *and* fails to pay the claim or loss covered by that contract. *See* V.T.C.A., Ins. § 101.201(a). Based on the evidence and argument presented in the parties' summary judgment materials, the Court finds that a triable issue exists relative to whether Plaintiff discovered, or should have discovered, that IFS was allegedly a "sham"– and financially incapable of satisfying its suretyship obligations assumed under the payment and performance bonds in question – more than a year prior to filing suit in February 2007.

Turning to Defendant's arguments regarding the applicability of §101.201, the Court agrees that, if *only* the text of that *particular* provision is considered, its application arguably is limited to actual insurance policies, rather than also including suretyship and/or guaranty contracts within its coverage. As Defendant emphasizes, the statute expressly refers to an "insurance contract," "insurer," and "insured," without also explicitly referencing a "suretyship contract," surety, principal, or obligee/beneficiary. *See* V.T.C.A., Ins. § 101.201(a). The Court believes it appropriate, however, to consider this provision in the context of other statutory provisions also found in Chapter 101 of the Texas Insurance Code, which addresses "Unauthorized Insurance."

Having done this, the Court, on the showing made, is not adequately convinced that §101.201 does not apply to the suretyship obligations at issue here.

The Court reaches this conclusion for a number of reasons. First, and most importantly, §101.001 expressly proclaims the Texas legislature's intent to protect its residents, as well as affected persons in other states, from acts by persons or insurers not authorized to do business in Texas, *and*, moreover, to prevent Texas from "becoming a safe harbor for persons or insurers engaged in the unauthorized business of insurance in that state." *See* V.T.C.A, Ins. §101.001. Construing the terminology of §101.201(a) to cover IFS's suretyship obligations at issue furthers, and is consistent with, these laudable goals. Indeed, to exclude such obligations from the coverage of §101.201(a) would frustrate these goals. *Cf. Insurance Co. of North America v. Morris*, 981 S.W.2d 667, 672 (Tex. 1998) ("consumer protection purposes of the Insurance Code would be undermined if surety bonds could be freely sold by unauthorized insurers or through unlicensed agents").

Furthermore, §101.051 of Chapter 101, "Unauthorized Insurance," expressly identifies "guaranty and suretyship contracts" as "acts .. constituting the business of insurance" in Texas. *See* V.T.C.A., Ins. §101.051(b)(2). Relatedly, §101.002 defines "insurer," for purposes of Chapter 101, to include entities or an individual "engaged as a principal in the business of insurance." *See* V.T.C.A., Ins. §101.002. Reading §101.002 and §101.051(b)(2) together, the principal of a surety would qualify as an "insurer" for purposes of Chapter 101, which, as indicated, includes §101.201.

Additional support for the Court's conclusion is found in *Threlkeld-Covington v. Baker Drywall Co.*, 837 S.W.2d 840, 842 (Tex. App.- Eastland 1992). There, a Texas appellate court cited the statutory predecessors to §101.051(b)(2) and §101.201 in finding that the making of a suretyship contract constituted an "act of insurance," and that procurer liability was available when

the unauthorized surety failed to satisfy a payment bond. *Id.*

On the other hand, the Court is aware that, in *Great American Insurance Company v. North Austin Municipal Utility District No. 1*, 908 S.W.2d 415, 422-24 (Tex. 1995), on which Defendant relies heavily, the Texas Supreme Court thereafter concluded that the language "business of insurance" in former article 21.21, §16, of the Texas Insurance Code (the predecessor to present §541.151), which provided a private cause of action for injuries caused by "unfair or deceptive" trade practices, did not include all acts, including suretyship, designated as the "business of insurance" by former article 1.14-1 of the Texas Insurance Code (the predecessor to present §101.051). In making this determination, however, the Texas Supreme Court, in addition to noting various factual differences between contracts of insurance and contracts of suretyship, strongly emphasized the concerns intended to be addressed by former article 1.14-1, relative to unauthorized insurers, versus the particular nature of the cause of action provided by former article 21.21 for "unfair or deceptive" trade practices. *Great American*, 908 S.W.2d at 422-24. The *Great American* Court further reasoned that construing former article 21.21 to apply to sureties could create a "tension" with other rights specifically provided to sureties under section 34.02 of the Texas Business and Commerce Code. *Id.* at 419.

Unlike in *Great American*, however, the statutory remedy at issue here does not present similar problems. Rather, as previously noted, construing §101.201 to encompass suretyship contracts and the parties thereto furthers the Legislature's desire, expressly stated in §101.001 and otherwise apparent in other provisions of Chapter 101 of the Texas Insurance Code, to provide protection from unauthorized insurers. Further, the factual differences between suretyship contracts and true insurance contracts have not been shown to be material under the circumstances present

8

here. Thus, the Court is of the opinion that the application of *Great American* should be limited to the unfair or deceptive trade practices addressed by former article 21.21, §16, of the Texas Insurance Code (the predecessor to present §541.151), and, accordingly, is inapposite here. *Cf. Morris*, 981 S.W.2d at 672 (noting that exclusion of sureties in from the "business of insurance" in *Great American* was limited to former article 21.21).[2]

With respect to Defendant's assertion that the surety contracts at issue here were not "effective in Texas," as that phrase is used in §101.201, it is unfortunate that the Texas Insurance Code does not specifically define this statutory phrase. For reasons similar to those set forth above, however, the Court is not presently persuaded that the suretyship contracts here do not satisfy this requirement for purposes of the statutory remedy provided by §101.201. While Defendant is correct that the surety bonds issued by IFS covered a Louisiana construction project, Liberty, a Texas company with its principal place of business in Texas, was the principal on the bonds and the prime contractor for the project. Significantly, moreover, Liberty obtained the surety bonds through Defendant, which is a Texas corporation with its principal place of business in Texas. Considering the legislative goal of preventing Texas from "becoming a safe harbor for persons or insurers

---

[2] Defendant additionally urges the Court's consideration of a Texas state district court's May 15, 2008 ruling in *C.F. Jordan, L.P. v. Southern American Insurance, Inc., and C.A. McClure*, No. 2006-CI-11289, 407th Judicial District Court, Bexar County, State of Texas, which granted the defendants' motion for partial summary judgment and dismissed the plaintiff's claims under §101.201 of the Texas Insurance Code with prejudice. *See* Exhibit 1 to Defendant's Supplemental Memorandum in Support of Motion for Summary Judgment (Rec. Doc. No. 155-2). Although the ruling provides no explanation for the motion being denied, Defendant maintains that its underlying motion in that proceeding, which urged that statutory language and jurisprudence render §101.201 inapplicable to surety bonds, reveals the basis for the *Jordan* court's ruling. Even if Defendant is correct, this Court is not bound by such a ruling. The May 15, 2008 order itself provides almost no explanation of its rationale and, moreover, is an unpublished, interlocutory decision of a trial court. Under these circumstances, the Court hesitates to consider it to be compelling authority.

engaged in the unauthorized business of insurance in that state," and that §101.201 provides a remedy against the *procurers* of contracts issued by unauthorized entities, the Court is not convinced that the Louisiana situs of the work to be completed by Liberty, and protected by the bonds issued by IFS, renders the statute inapplicable. *Cf. Classic Motel, Inc. v. Coral Group, Ltd.*, 833 F. Supp. 593, 598, 604-606 (S.D. Miss. 1993) (applying statutory predecessor to §101.201 in a case involving a Mississippi plaintiff and insurance covering properties located in Mississippi).

Responding to Plaintiff's assertion that the IFS suretyship contracts are "effective" where they can be enforced, Defendant additionally contends that the bonds are enforceable only in Louisiana because that is where the "work" covered by the bonds occurred. Defendant cites Paragraph 11 of the Payment Bond and Paragraph 9 of the Performance Bond in support of this contention. *See* Exhibit 10 to Defendant's Motion for Summary Judgment (Rec. Doc. 88-16). These provisions, however, when considered carefully, are not as compelling as Defendant suggests.

Paragraph 11 of the Payment Bond requires that a "Claimant" commence suit where the work or part of the located. *Id.* In that bond, however, Plaintiff is referred to as the "Owner," not the "Claimant." *Id.* Indeed, Paragraph 15.1 of that document defines "Claimant" as "[a]n individual or entity having a direct contract with the Contractor [Liberty] or with a subcontractor of the Contractor to furnish labor, materials, or equipment for using the performance of the Contract . . . ." *Id.* Further, although Paragraph 9 of the performance bond refers to "any proceeding," and seemingly would not exclude Plaintiff from its application, it additionally states that any proceeding *may,* as opposed to *shall,* be instituted in the location where the contract work or part of the work is located. *Id.* Thus, on the showing made, it is not clear that Plaintiff could not seek to enforce the surety bonds in a court of competent jurisdiction outside of south Louisiana. Further, if

"enforceability" is the determinative factor, as Plaintiff appears to suggest, it seems that Plaintiff likely could seek to enforce a Louisiana judgment in a Texas court.

### III. Conclusion

For the foregoing reasons, having considered the parties' submissions, the Court determines that, as a matter of law, Plaintiff is not eligible for relief under the Texas Deceptive Trade Practices Act. The same is not true, however, with respect to the relief sought by Plaintiff under §§101.201 and 101.202 of the Texas Insurance Code. Accordingly, **IT IS ORDERED** that Defendant's motion is **GRANTED IN PART** and **DENIED IN PART**.

New Orleans, Louisiana, this 19th day of December 2008

**KURT D. ENGELHARDT**
**United States District Judge**

11