UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| LAMBETH HOUSE, INC. | CIVIL ACTION |
|---|---|
| VERSUS | NO. 07-608<br>c/w  08-4967 |
| LIBERTY RESTORATION GROUP, LLC, ET AL. | SECTION "N" (4) |

### ORDER AND REASONS

Presently before the Court – for a second time – is the issue of Plaintiff's, Lambeth House, Inc., entitlement to an award of attorney's fees against the defendants to these consolidated actions, including Defendant Southern American Insurance Agency, Inc. ("Southern American"). *See* Rec. Docs. 444, 493, and 495. **IT IS ORDERED** that Lambeth House's request for attorney's fees and costs is **GRANTED** against the defendants to the extent stated herein. **IT IS FURTHER ORDERED** that the matter is referred to Magistrate Judge Karen Wells Roby for preparation of a Report and Recommendation regarding the proper quantification of those awards.

### I.     Background

In April 2004, Plaintiff, Lambeth House, Inc. ("Lambeth House), entered into a construction contract with Defendant Liberty Restoration Group ("Liberty").  Pursuant to the contract, Liberty was to renovate the exterior cladding of Lambeth House's continuing care retirement facility in New Orleans, Louisiana.  The construction contract between Lambeth House

and Liberty additionally obligated Liberty to furnish payment and performance bonds from a solvent, legal surety in accordance with the Louisiana Private Works Act, La. R.S. 9:4801, *et seq*. Liberty purported to satisfy this obligation by obtaining payment and performance bonds from Defendant International Fidelity & Surety, Ltd. ("IFS") through Defendant Southern American.

Lambeth House eventually demanded that IFS satisfy its obligations relative to the performance and payment bonds that it had issued. Ultimately, however, it became evident that IFS was not financially capable of doing so, and was not authorized to act as a commercial surety in either Louisiana and Texas. Further, according to Lambeth House, it discovered that IFS actually was a "sham" company. Hoping to obtain some relief from the failed transaction, Lambeth House filed suit against Liberty, IFS, and Southern American.

The matter proceeded to trial by jury on January 5-9, 2009. *See* Rec. Docs. 326, 327, 330 and 352. Only Southern American sought to defend itself at trial against Lambeth House's claims. At the conclusion of the trial, the jury found that Liberty had breached its construction contract with Lambeth House. With respect to Lambeth House's claim against Southern American under §101.201 of the Texas Insurance Code, the jury found that Lambeth House had suffered damages in the amount of $2,712,967.00. *See* Rec. Doc. 352-4. Shortly thereafter, the Court granted a default judgment in Lambeth House's favor against Liberty and IFS in the amount of $2,758,796.05, plus pre-judgment interest from the date of judicial demand until paid. *See* Rec. Docs. 352 and 397.

Having reserved the issue of an attorney's fees and costs for post-trial determination, the Court then instructed Lambeth House to file a motion seeking that relief. *See* Rec. Docs. 352,

394-95, and 398.¹ Following consideration of the parties' submissions, the Court determined that Section 3.18.1 of the Liberty construction contract, which was incorporated into the bonds that were issued by IFS, entitled Lambeth House to recover an award of attorney's fees and costs from the defendants to this suit. *See* Rec. Doc. 444. At that time, the Court also referred the matter to the assigned magistrate judge for preparation of a Report and Recommendation regarding the proper amount of that award. *Id.*

Upon consideration of the parties' submissions, Magistrate Judge Roby issued a Report and Recommendation indicating that, in her assessment, Southern American was seeking to have her review the Court's earlier determination that attorney's fees could be awarded against it. *See* Rec. Doc. 493. Magistrate Judge Roby additionally concluded that Southern American's request prevented her, as the magistrate judge, from recommending an amount of attorney's fees and costs to be awarded by the district judge. *Id.* Desiring to achieve final resolution of the matter, the Court adopted Magistrate Judge Roby's recommendation as its opinion and ordered Southern American to supplement its briefing to address the problematic issue identified in Magistrate Judge Roby's Report and Recommendation. *See* Rec. Doc. 495. Additional submissions from both Southern American and Lambeth House followed. *See* Rec. Docs. 497 and 501.

## II. Analysis

The Court has carefully reviewed all of the parties' submissions regarding the issue of attorney's fees and costs, including those submitted prior to the Court's previous order (Rec. Doc. 444), and those submitted for Magistrate Judge Roby's consideration. The Court also is aware that

---

[1] Southern American previously argued to Magistrate Judge Roby that evidence of attorney's fees and costs should have been submitted to the jury, but was not, and thus is now precluded. These documents demonstrate that assertion to be completely unfounded. *See* Rec. Doc. 472 at pp. 6-7.

3

the Lambeth House and Southern American have reached a stipulation regarding the reasonableness of Lambeth House's counsel's hourly rates. *See* Rec. Doc. 466.

The extent of the three defendants' liability for attorney's fees and costs turns on the provisions of: (1) paragraph 3.18.1 of the construction contract entered into by Lambeth House and Liberty; (2) the incorporation of paragraph 3.18.1 by the IFS bonds; and, with respect to Southern American, (3) the provisions of §101.201(a) of the Texas Insurance Code.

As the parties are well aware, paragraph 3.18.1 of the Liberty construction contract provides:

> To the fullest extent permitted by law, the Contractor shall indemnify, hold harmless, protect and defend the Owner, its successors and assigns, and their respective agents, representatives, and affiliates and all of their respective officers, directors, employees, members, shareholders and partners (each, an "Indemnitee" and collectively the "Indemnitees"), **against any and all claims, losses, liabilities, damages, costs and expenses, including reasonable attorneys' fees and costs of defense (for ease of reference in this Paragraph 3.18.1, individually a "claim" and collectively "claims"), to the extent any such claim arises out of or results from performance of the Work and is caused by the negligence or willful misconduct of any Contractor Party or by a breach by the Contractor of any of its obligations under the Contract.** Without limiting the generality of the foregoing, the Contractor, at its sole expense, shall indemnify, hold harmless, protect and defend the Indemnitees against any claims arising out of or in connection with any liens filed against the Work, the Project site or any improvements thereon (for ease of reference, individually a "lien" and collectively "liens"). Within 10 days of a request from the Owner, the Contractor shall cause any such lien to be released of record, by bonding or otherwise. The filing of a lien bond or other security for the release of any such lien shall not relieve the Contractor of its indemnification obligations hereunder. The cost of any premiums incurred in connection with any lien bonds shall be the responsibility of the Contractor and shall not increase the Contract Sum. The Contractor shall keep each Indemnitee apprised of its progress in defending a claim that is governed by this Subparagraph and shall allow each Indemnitee reasonable opportunity to participate in the defense of

any such claim.[2]

And §101.201(a) of the Texas Insurance Code provides, in pertinent part:

> **§101.201  Validity of Insurance Contracts**
>
> An insurance contract effective in this state and entered into by an unauthorized insurer is unenforceable by the insurer.  A person who in any manner assisted directly or indirectly in the procurement of the contract is liable to the insured for the **full amount of a claim or loss under the terms of the contract** if the unauthorized insurer fails to pay the claim or loss.[3]

As indicated by the Court's previous order regarding attorney's fees and costs (Rec. Doc. 444), the Court rejects Southern American's argument that paragraph 3.18.1 of the construction contract applies only when a third party has made a claim against Lambeth House, *i.e.*, when Lambeth House incurs attorney's fees and costs as a result of *defending* a claim rather than *asserting* a claim.  To the contrary, the Court finds that the paragraph is sufficiently broad to require that the contractor, Liberty, reimburse Lambeth House for any attorney's fees and costs incurred by Lambeth House that "arise[] out of or result[] from performance of the Work *and* [are] caused by the negligence or willful misconduct of [Liberty] *or* by a breach by [Liberty] of any of its obligation under the Contract."

Thus, applying paragraph 3.18.1 to the instant case, the Court finds, at it did before, that the attorney's fees and costs that Lambeth House incurred in establishing Liberty's liability, *i.e.* in proving the breach of Liberty's contract and the damage therefrom, "arose out of or resulted from performance of the Work *and* was caused by the negligence or willful conduct of Liberty or by a

---

[2] *See* Exhibit "C" to Lambeth House's Post-Trial Motion for Attorney's Fees and Costs at ¶3.18.1 (Rec. Doc. 416-4 at LAM 0734) (underlining in original; other emphasis added).

[3] *See* V.T.C.A. §101.201 (emphasis added).

breach by Liberty of [certain] of its obligations under the Contract." Specifically, the jury found that Liberty had breached the contract with Lambeth House. And, as set forth above, the construction contract required that Liberty furnish payment and performance bonds from a solvent, legal surety in accordance with the Louisiana Private Works Act, La. R.S. 9:4801 *et seq*. Liberty undisputedly breached this obligation when it obtained payment and performance bonds from IFS.

Turning to the attorney's fees and costs incurred by Lambeth House in establishing IFS's liability, the Court concludes, as it did before, that the bonds issued by IFS incorporate paragraph 3.18.1 of the construction contract and, thus, require IFS, as surety, to pay any sums that Liberty is obligated to pay pursuant to paragraph 3.18.1, but does not. The Court likewise finds that the attorney's fees and costs incurred by Lambeth House in establishing IFS's liability also "arose out of or resulted from performance of the Work and were caused by the negligence or willful conduct of Liberty or by a breach by Liberty of certain of its obligations under the Contract." Specifically, if Liberty had adequately performed its construction obligations under the contract and had obtained performance and payment bonds from a solvent and legal surety, Lambeth House would not have incurred attorney's fees and costs in proving IFS's liability. Thus, <u>both</u> Liberty and IFS are obligated to reimburse Lambeth House for the total amount of the attorney's fees and costs incurred by Lambeth House in establishing the liability of Liberty <u>and</u> IFS. Or stated differently, both Liberty and IFS are obligated to Lambeth House for the total amount of the attorney's fees and costs incurred by Lambeth House in pursuing its claim against Liberty and its claim against IFS.

Finally, the Court addresses Southern American's liability under §101.201(a) of the Texas Insurance Code. This statutory provision provides a cause of action against persons who in any manner assisted directly or indirectly in the procurement of an insurance contract from an

unauthorized insurer. Specifically, if the unauthorized insurer fails to pay the claim or loss, the person who assisted in procuring the contract from the unauthorized insurer is "liable to the insured for the full amount of a claim or loss under the terms of the contract."

Thus, Southern American is liable to Lambeth House for the full amount of its claim or loss under the terms of the IFS bonds, which, in turn, incorporate paragraph 3.18.1 of the construction contract between Liberty and Lambeth House. Accordingly, Southern American is obligated to reimburse Lambeth House for any attorney's fees and costs incurred by Lambeth House in establishing the liability of both Liberty and IFS to the extent that any such amounts are not paid by Liberty or IFS.

Finally, with respect to the attorney's fees and costs incurred by Lambeth House in pursuing its claims against Southern American under §101.201(a) of the Texas Insurance Code, the Court emphasizes that the accompanying statutory attorney's fee provision, §101.202, is inapplicable. Accordingly, Plaintiff is entitled to recover attorney's fees and costs from Southern American, pursuant to §101.201(a), only insofar as they qualify as a claim or loss under the terms of the IFS bonds which incorporate paragraph 3.18.1 of the Liberty construction project. Thus, to be recoverable by Plaintiff, the attorney's fees and costs in question must "arise[] out of or result[] from performance of the Work *and* [be] caused by the negligence or willful misconduct of [Liberty] *or* by a breach by [Liberty] of any of its obligation under the Contract." Accordingly, while the Court has found that the attorney's fees and costs that Lambeth House incurred in establishing the liability of Liberty and IFS are recoverable against Southern American, the same cannot be said with respect to the fees incurred by Lambeth House *solely* in pursuit of its statutory claim against Southern American. In other words, the attorney's fees and costs that Lambeth House incurred in

7

litigating the applicability of §101.201(a) to the IFS bonds were caused by Southern American's failure to voluntarily comply with the obligations imposed against it by Texas Insurance Code; they were *not* caused by Liberty's conduct relative to the construction contract. While the Texas Legislature obviously could require persons such as Southern American to pay attorney's fees and costs when such conduct requires the expense of litigation, it has not. Thus, in the absence of contractual or statutory authority, this Court cannot include that category of attorney's fees and costs in those that the defendants are required to pay Lambeth House.

To summarize:

(1) Defendant <u>Liberty</u> is ordered to reimburse Lambeth House for all of its attorney's fees and costs incurred in proving its claims (and resulting damages) against Liberty and IFS.

(2) Defendant <u>IFS</u> is ordered to reimburse Lambeth House for all of its attorney's fees and costs incurred in proving its claims (and resulting damages) against Liberty and IFS.

(3) Defendant <u>Southern American</u> is ordered to pay Lambeth House for all of its attorney's fees and costs incurred in proving its claims (and resulting damages) against Liberty and IFS, but is not required to pay for the attorney's fees and costs incurred in litigating the applicability of §101.201(a) to the IFS bonds.

While the Court believes that the foregoing rulings should adequately enable the parties to properly address quantification of the attorney's fees and cost award before Magistrate Judge Roby, the Court additionally provides the following determinations in hopes of simplifying matters and avoiding the possibility of further uncertainty or the submission of entirely new assertions by counsel. Specifically:

(1) Lambeth House's recoverable attorney's fees and costs are not to be reduced

simply because it failed to seek a pre-trial default judgment against Liberty and IFS. Because Lambeth House actually was not required to sue Liberty and IFS in order to pursue its claim against Southern American, however, but rather only had to establish their liability, it may not recover attorney's fees and costs incurred solely in connection with filing suit against and serving Liberty and IFS, or in seeking a default judgment against them at the conclusion of the trial.

(2) Lambeth House's recoverable attorney's fees and costs are not to be reduced simply because it did not timely seek summary judgment against Liberty and IFS, but it may not recover the attorney's fees and costs spent in drafting the untimely motions and supporting memoranda except to the extent that the associated attorney time and/or costs resulted in material that also was used in connection with another compensable purpose such as trial preparation.

(3) To the extent that the attorney's fees and costs associated with the depositions of Kelly Joe Brooks, Al McClure and Phil Ballenger are not otherwise recoverable pursuant to the Court's foregoing determinations, Lambeth House is entitled to recover the portion of those fees and costs resulting from Southern American's erroneous discovery responses regarding its access of the surplus market and whether it acted as an "agent" in procuring the IFS bonds.

(4) Lambeth House may recover attorney's fees and costs expended post-trial in preparing its time sheets for submission and in drafting its fee application only to the extent that such expenditures were necessary to establish the "full amount of its claim or loss under the terms of the [IFS] contract."

Lastly, the Court recognizes that counsel and the parties desire to completely and finally resolve this matter expeditiously. Accordingly, **IT IS ORDERED** that:

(1) Counsel and the parties are to carefully and thoroughly review this Order and

Reasons promptly upon receiving it. To the extent that any other issue regarding entitlement, rather than quantification, still exists and requires resolution by the undersigned, rather than Magistrate Judge Roby, counsel must submit a short memorandum addressing that issue within ten (10) calendar days from the date that this Order and Reasons are entered into the record. This directive, however, is not in any way to be utilized as a means by which to offer new arguments to the Court or to simply re-urge arguments that the Court already has expressly or implicitly rejected.

(2) Counsel for Lambeth House are to promptly revise its request for attorney's fees and costs in accordance with the Court's determinations herein. Unless otherwise ordered by the undersigned or Magistrate Judge Roby, this is to be completed no later than twenty (20) calendar days from the date that this Order and Reasons is entered into the record.

(3) Counsel are to promptly confer in good faith to determine whether, in light of the Court's rulings herein, any additional stipulations can be reached that may simplify the quantification of appropriate attorney's fees and costs awards.

New Orleans, Louisiana, this 16th day of September 2010.

_____
**KURT D. ENGELHARDT**
**United States District Judge**